UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES JEFFERSON KENNER, <br><br> Plaintiff, <br><br> v. <br><br><br> WILLIAM MILLER, *et al.*, <br><br> Defendants. | 3:13-cv-00706-MMD-VPC <br><br><br> **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#22). Plaintiff opposed (#24), and defendants replied (#25). The court has reviewed the motion and papers, and hereby recommends that defendants' motion be granted.

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

James Jefferson Kenner ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). Presently, plaintiff is incarcerated at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings several civil rights claims against NNCC officials.

The District Court screened the complaint on June 5, 2014, and permitted the following claims to proceed. First, plaintiff brings a claim under the Fourteenth Amendment against Sergeants William Miller ("Miller") and Officer Eugene Murguia ("Murguia") for deprivation of a Sony Walkman without due process of law. (#3 at 3-4.) Second, plaintiff contends that Murguia and Officer Christopher Jones ("Jones") violated his Fourteenth Amendment due process rights by failing to afford him various procedural protections during a prison disciplinary hearing. (*Id*. at 4-5.) Finally, plaintiff alleges that laundry supervisor Pam Harrison ("Harrison")

was deliberately indifferent to his medical needs by denying him "medically necessary shoes." (*Id.* at 5-6.)

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" only where a sufficient evidentiary basis would allow a reasonable jury to find for the nonmoving party. *Id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. When the moving party bears the burden of proof at trial, it must support its motion "with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the

basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden under Rule 56, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute that requires a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at 783.

### III. DISCUSSION

**A. Fourteenth Amendment Deprivation of Property Claim**

**1. Legal Standard**

As the Ninth Circuit has made clear, the government may not take property "'like a thief in the night.'" *Lavan v. City of Los Angeles,* 693 F.3d 1022, 1032 (9th Cir. 2012) (quoting *Clement v. City of Glendale,* 518 F.3d 1090, 1093 (9th Cir. 2008)). Because prisoners have a constitutionally protected interest in their personal property, the Fourteenth Amendment guarantees due process to deprivations of inmate property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). "An agency, such as the NDOC, violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures of property "[w]ithout

1  underlying [statutory] authority and competent procedural protections." *Vance v. Barrett,* 345
2  F.3d 1083, 1090 (9th Cir. 2003).

3  Antecedent to a Fourteenth Amendment claim is, necessarily, the existence of a property
4  interest.  If the plaintiff lacks a cognizable property interest in the matter allegedly deprived, no
5  process is due, and consequently, no due process claim arises. *See Morrissey v. Brewer*, 408 U.S.
6  471, 481 (1982) ("The requirements of procedural due process apply only to the deprivation of
7  interests encompassed by the Fourteenth Amendment's protection of liberty and property."); *Bd.*
8  *of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest . . . , [an individual
9  must] have a legitimate claim of entitlement to it.").  "Property interests are not created by the
10 Constitution, but rather by 'existing rules or understandings that stem from an independent source
11 such as state law.'"  *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998) (quoting
12 *Roth*, 408 U.S. at 577); *Nevada Dep't of Corrs. v. Greene,* 648 F.3d 1014, 1019 (9th Cir. 2011).

13 Some level of process is due to determine whether a claim of property ownership is
14 genuine.  As the Supreme Court has stated, "the State may not finally destroy a property interest
15 without first giving the putative owner an opportunity to present a claim of entitlement."  *Logan*
16 *v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982).  Prior to taking property, the government
17 must afford the putative owner with notice and a meaningful opportunity to be heard, *see Lavan,*
18 693 F.3d at 1032, and these requirements presumptively extends to the taking of unowned
19 property that one nevertheless claims as his own.  Although pre-deprivation process is favored
20 where possible, a post-deprivation hearing, or a common-law tort remedy for erroneous
21 deprivation, may satisfy due process in some circumstances. *See Zinermon v. Burch*, 494 U.S.
22 113, 128 (1990).

23 **2.    Analysis**

24 This claim pertains to Offender-in-Custody ("OIC") charge number 361016.  Plaintiff
25 alleges that, on June 20, 2013, Miller deprived him of his Sony Walkman without due process of
26 law. (#4 at 4.)  Disciplinary proceedings followed, on June 27, 2013 at which Murguia presided
27 and determined that the Walkman was stolen.  Plaintiff claims that Murguia permanently
28

1  deprived him of the Walkman in absence of statutory authority, and that defendants failed to
2  provide adequate notice prior to the hearing. (*Id*.)

3  Defendants move for summary judgment because plaintiff was provided notice and a post-
4  confiscation disciplinary hearing. (#22 at 5-6.) They argue that Murguia determined that plaintiff
5  had stolen the Walkman because its engraving reflected forgery—namely, the scratching out of
6  another inmate's name and number and the counterfeit inscription of plaintiff's name and
7  number. (*Id*. at 6.) This, they contend, constitutes "some evidence" as required in such
8  proceedings. Plaintiff opposes by restating the positions set forth in his complaint. (*See* #24 at
9  1.) Defendants reply that the records they submit foreclose plaintiff's ability to establish his
10 ownership of the Walkman and, in any event, plaintiff has failed to rebut their evidence that he
11 received adequate process prior to forfeiture of the stolen good. (#25 at 1-2.)

12 Defendants are entitled to summary judgment. As an initial matter, some level of process
13 was due to dispossess plaintiff of the Walkman. It is true that plaintiff lacked a bona fide
14 property interest in the item because it did not belong to him.[1] As the Supreme Court has noted,
15 property interests in stolen property are "totally illegitimate." *Brown v. United States*, 411 U.S.
16 223, 229 (1973). Since due process claims arise only where the plaintiff has a property interest,
17 *Morrissey*, 408 U.S. at 481, one might conclude that no process was due. Yet that conclusion is
18 unsatisfactory because it would permit prison officials to confiscate property, without any
19 procedural protections, any time they deem a good to be stolen. Legitimate or not, some level of
20 process must occur to fairly determine that question. Accordingly, the court concludes that some
21 level of process—namely, notice and a hearing—must take place prior to the ultimate deprivation
22 of stolen property to determine the antecedent question of whether the inmate has a property
23 interest.

---

[1] As described, at the June 27 disciplinary hearing, the Murguia concluded that the Walkman had been stolen and that plaintiff forged his own name and number into it. (*See* #22-7.) His reliance on Miller's report satisfies the "some evidence" standard applicable to prison disciplinary hearings, *see Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), and it is not this court's place to substitute its judgment on the ownership issue, *see Bruce v. Yist*, 351 F.3d 1283, 1287 (9th Cir. 2003). As such, the court accepts as fact that the item was not plaintiff's property, thereby necessitating the conclusion that any claim of a property interest for Fourteenth Amendment purposes is not genuine.

5

The record establishes beyond dispute that defendants provided afforded to plaintiff the essential attributes of due process regarding the ownership of the Walkman. (#22-1 at 2-7.) Plaintiff received notice regarding the unauthorized possession charge[2] in advance of a post-deprivation hearing, at which he had an opportunity to be heard prior to the permanent forfeiture of the Walkman. This satisfied all that the Constitution requires. *Lavan*, 693 F.3d at 1032 (stating the familiar notice and hearing requirements); *Burch*, 494 U.S. at 128 (finding that post-deprivation procedure satisfies the Fourteenth Amendment).

The court reaches this conclusion even though the taking was an authorized one and due process followed the initial property deprivation. The record establishes that Miller confiscated the Walkman one week prior to the disciplinary hearing. Miller did so pursuant to Nevada law, which provides for property interests in chattel such as the Walkman but allows restrictions upon such property as adopted by the NDOC.[3] *See* Nev. Rev. Stats. 10.045, 209.239. Under NDOC Administrative Regulation ("AR") 711, inmates may not move, store, or handle another inmate's property, nor may the lend property to one another. (#30 at 5.) Necessarily entailed within the AR, then, is a prohibition on possessing stolen property, for such an act involves handling the rightful property of another. AR 711 further contemplates confiscation of such property, as "[i]nstitutions/facilities will not permit the possession of personal property that is not specifically authorized[,]" (*id*. at 5), and AR 707 renders such an action punishable under the internal penal disciplinary code (*see* #22-6).

Ordinarily, authorized deprivations are not cured by post-deprivation remedies, *see Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985), as "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so . . . ," *Zinermon*, 494 U.S. at 127. Yet the Ninth Circuit has observed that "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures . . . are sufficiently reliable to minimize the risk of erroneous determination, a prior hearing may

---

[2] For brevity, the court discusses plaintiff's allegations regarding notice only in Part III.B, *infra*. The court's discussion of the notice extends to its conclusion here that plaintiff received notice.
[3] Consequently, plaintiff's contention that the confiscation is in want of statutory authority is meritless.

6

not be required." *Weinberg v. Whatcom Cnty.*, 241 F.3d 746, 753-54 (9th Cir. 2001) (internal quotation and citation omitted). In limited cases, "post-deprivation process can suffice . . . when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted." *Shinault v. Hawks*, 776 F.3d 1027, 1031 (9th Cir. 2015) (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988)).

Such is the case here. The initial deprivation—namely, the period between Miller's confiscation and the final determination—lasted only one week. The court is sympathetic that the nature of incarceration renders deprivation of items like music players particularly significant, but it nevertheless cannot be said that the deprivation was a severe, serious loss, *Weinberg*, 241 F.3d at 753-54, for it merely interfered with a form of recreation. Moreover, in light of the NDOC's recordkeeping of an inventory of inmate property (*see* #s 25-1, 25-2, 25-3) and the practice of engraving music players with identifying information with recognizable scripts (*see* #22-7), the disciplinary hearing process is a procedure "sufficiently reliable to minimize the risk of erroneous deprivation." *Weinberg*, 241 F.3d at 753-54. These same facts provide substantial assurance that the deprivation was not baseless. *Shinault*, 776 F.3d at 1031.

Moreover, the NDOC's interest here was plain and important. Were prison officials required to provide a notice and hearing before they could confiscate unauthorized and/or stolen property from inmates, there is a fair possibility that the items might be destroyed or hidden. In this case, that might prevent return of the Walkman to its rightful owner. In the case of serious contraband, such a rule may manifest as serious security risks to the health and safety of other inmates and prison staff. Thus, "prompt action is required," and post-deprivation process is constitutionally permissible. *See id*. Because plaintiff received notice and a meaningful hearing following the initial confiscation of the stolen Walkman, the record forecloses his ability to prevail on the claim and defendants are entitled to summary judgment.

### B. Fourteenth Amendment Procedural Due Process Claim

Plaintiff brings two due process claims, one each in counts I and II.[4] The court discusses each in turn.

#### 1. Legal Standard

The Fourteenth Amendment of the U.S. Constitution guarantees all citizens, including inmates, due process of law. However, only certain interests receive the guarantees of due process; an inmate's right to procedural due process arises only when a constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Therefore, courts analyze procedural due process claims in two parts. First, the court must determine whether the plaintiff possessed a constitutionally protected interest. Second, and if so, the court must compare the required level of due process with the procedures the defendants observed. *Brown v. Ore. Dep't of Corrs.*, 751 F.3d 983, 987 (9th Cir. 2014). A claim lies only where the plaintiff has a protected interest, and defendants' procedure was constitutionally inadequate. *Id.*

#### a. Protected Liberty Interests

Under the Due Process Clause, an inmate does not have liberty interests related to prison officials' actions that fall within "the normal limits or range of custody which the conviction has authorized the State to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). The Clause contains no embedded right of an inmate to remain in a prison's general population. *Id.* at 485-86. Further, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *overruled on other grounds by Sandin*, 515 U.S. at 472-73.

---

[4] Although the screening order permits count II to proceed as a due process claim, it is silent as to a due process claim in count I. (*See* #3.) However, plaintiff complains in that count of deprivation of his liberty, through placement in solitary confinement, without first receiving a notice of charges. (#4 at 4.) Defendants address the notice-of-charges allegation in their motion (*see* #22 at 5-6), and their statements provide a sufficient basis for a summary judgment argument on this claim. Because courts in this district are not to set aside claims unless they are explicitly dismissed in the screening order, *see McDowell v. Rimington*, No. 3:12-cv-00249-MMD-WGC, 2013 WL 5316455, at *2 (D. Nev. Sept. 23, 2013), the court construes count I as also stating a claim for denial of due process. As such, there are two due process claims in this action.

State law also may create liberty interests protected under the Due Process Clause but "these interests will generally be limited to freedom from restraints which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483-84. An inmate may show a protected liberty interest only by demonstrating that the segregation to which he was subjected rises to the level of "atypical and significant hardship." *Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013). When conducting the "atypical and significant hardship" inquiry, courts examine a "combination of conditions or factors . . . ." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). These factors include: (1) the extent of difference between segregation and general population; (2) the duration and intensity of the conditions confinement; and (3) whether the sanction extends the length of the prisoner's sentence. *Chappell,* 706 F.3d. 1064-65. The inquiry "requires case by case, fact by fact consideration." *Id*. at 1064 (internal citation and quotation marks omitted).

On several occasions, courts have applied the *Sandin* factors to administrative segregation. "Typically," as the Ninth Circuit has observed, "administrative segregation in and of itself does not implicate a protected liberty interest" under the *Sandin* factors. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Only where the terms of segregation are extreme—for example, indefinite solitary confinement that necessarily entails the loss of parole eligibility—have most courts found that liberty interests might arise. *E.g.*, *Wilkinson*, 545 U.S. at 224; *Brown*, 751 F.3d at 988. As courts in this District have observed, this reasoning extends to disciplinary segregation, for "[n]o matter how a prisoner's segregation . . . is labeled by the prison or characterized by the prisoner, a court must examine the substance of the alleged deprivation and determine whether it constitutes an atypical and significant hardship . . . ." *Hernandez v. Cox*, 989 F. Supp. 2d 1062, 1068-69 (D. Nev. 2013) (internal quotation marks omitted).

**b.    Requirements of Due Process**

Although "a prisoner is not wholly stripped of constitutional protections when he is imprisoned for a crime . . . [,]" *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974), his right to due process is not unfettered. Therefore, in prison disciplinary proceedings, "due process requires that the inmate receive: (1) written notice of charges; (2) at least twenty-four (24) hours between

the time the prisoner receives the written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the hearing officer of the evidence relied upon and the reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues presented are legally complex." *Kirk v. Foster*, No. 3:13-cv-00296-RCJ-WGC, 2014 WL 6792028, at *15 (citing *Wolff*, 418 U.S. at 564-71).   Yet due process protections must accommodate legitimate institutional considerations. *Bostic v. Carlson*, 884 F.2d 1267, 1269-70 (9th Cir. 1989) (citing *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985)); *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).   Accordingly, the prison may place some limits on an inmate's efforts to defend himself so long as those limits relate to legitimate penological needs. *Koenig*, 971 F.2d at 423.

Additionally, the hearing officer's decision must be based upon "some" evidence. *Castro v. Terhune*, 712 F.3d 1304, 1307 (9th Cir. 2013) (citing *Hill*, 472 U.S. at 455).   The showing required by this standard is "minimally stringent," *id.* at 1314 (quoting *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994)), and the court is not to "examine the entire [underlying] record, independently assess witness credibility, or reweigh the evidence," *id*. (citing *Bruce v. Yist*, 351 F.3d 1283, 1287 (9th Cir. 2003)).   Stated differently, as long as prison officials relied on some evidence, the court shall not substitute its view of the facts under the guise of scrutinizing procedure;  the court is limited to verifying that the decision had some basis, even if the court might reach a contrary determination had it been presented with the evidence in the first instance.

**2. Analysis**

**a. Count I**

Plaintiff alleges that he did not receive a notice of charges for OIC number 361016, pertaining to his unauthorized possession of the Walkman on June 20, 2013. (#4 at 4.) Because Miller gave plaintiff a disciplinary segregation sentence as a result of the violation, plaintiff alleges that the lack of due process violated his constitutional rights.

1    Defendants move for summary judgment on the basis that plaintiff did, in fact, receive all
2    process that was due and that Murguia based the decision to impose a disciplinary sanction on
3    "some evidence." (#22 at 6.) Plaintiff responds with reassertions that he never received notice
4    and that defendants are not entitled to summary judgment because they "cannot produce[] a
5    conformed (sic) copy of a notice of charges . . . ." (#24 at 4.) He suggests that the exhibit
6    produced by defendants is insufficient under the Best Evidence Rule. (*Id*.) Defendants counter
7    that plaintiff has failed to demonstrate he had a liberty interest that triggered due process, and also
8    that the record demonstrates plaintiff simply refused to sign the notice of charges that he was
9    provided. (#25 at 2-3.)

10    Defendants are entitled to summary judgment. First, plaintiff lacked a liberty interest in
11    avoiding disciplinary segregation. Plaintiff spent only sixty days in disciplinary segregation. (#4
12    at 5). He suggests in his opposition that he lost an opportunity to earn good time credits. (#24 at
13    8.) Only these allegations support his argument that he has a liberty interest. (*Id*.) Yet the loss of
14    good time credits, even if true, does not support the finding of hardship under the sentence-length
15    factor. *Sandin*, 515 U.S. at 487. Moreover, plaintiff's complaint and opposition is entirely silent
16    as to the "extent of difference between segregation and general population." *Chappell,* 706 F.3d.
17    1064-65. Plaintiff has failed to articulate sufficient facts by which a jury could find that he
18    encountered atypical hardship through disciplinary segregation. Consequently, he has not
19    demonstrated that he possessed a liberty interest, and no process was due. On that basis,
20    summary judgment is warranted.

21    Defendants have not, however, demonstrated that they afforded all process that *Wolff*
22    requires. As to notice, the record indicates that plaintiff received a notice of charges on June 27,
23    2013 at 2:48 p.m. (#22-1 at 7.) His opposition reiterates his contention that he did not receive it,
24    but he does not adequately explain the existence of the record. His sole argument, premised on
25    the Best Evidence Rule, is misplaced: Federal Rule of Evidence ("FRE") 1002 requires an
26    original document unless another rule otherwise provides, and FRE 1003 indicates that "[a]
27    duplicate is admissible to the same extent as the original unless a genuine question is raised about
28    the original's authenticity . . . ." Plaintiff does not challenge the authenticity of the exhibit.

11

1  Because plaintiff fails to raise a genuine dispute about the authenticity of the exhibit, the court
2  finds his argument as to lack of notice entirely unpersuasive.

3  Yet plaintiff's contention that he was denied witness testimony has some support in the
4  record. The disciplinary forms (#22-1) indicate that Hearing Officer David Vest, who presided
5  over a preliminary disciplinary hearing, denied plaintiff's requests for testimony by Christopher
6  Jones and James Bloomfield. (#22-1 at 5.) Plaintiff's requests were denied on the basis of
7  redundancy, but the record fails to provide facts or explanation of that characterization. Prison
8  officials may deny an inmate the testimony of witnesses only when legitimate penological needs
9  so demand. *Koenig*, 971 F.2d at 423. An unexplained denial of testimony on the basis of
10 redundancy, without supporting facts and arguments as to why the denial was proper, does not
11 sufficiently carry the summary judgment burden. Although defendants point out that plaintiff
12 declined witness testimony at the final hearing (*see* #22 at 10; #22-1 at 4), they have not
13 explained this discrepancy such that the court can conclude that plaintiff enjoyed all due process
14 protections that disciplinary proceedings might demand. Nevertheless, they are entitled to
15 summary judgment because, in light of the record, no process was due.

16 **b.    Count II**

17 This claim pertains to OIC number 363751. Here, similarly to count I, plaintiff alleges
18 that defendants placed him in solitary confinement in August 2013 without providing him due
19 process of law, as a result of a second (and unrelated) disciplinary violation. (#4 at 5.) He
20 contends that defendants failed to provide him with a notice of charges prior to placing him in
21 solitary confinement, and thereafter held a disciplinary hearing in which Murguia found him
22 guilty of a disciplinary infraction. (*Id*.) At the hearing, Murguia allegedly lacked a confirmed
23 copy of the notice, failed to advise him of his right to remain silent, and also denied him the
24 ability to call witnesses. (*Id*.)

25 Defendants argue that summary judgment is warranted because plaintiff's allegations do
26 not give rise to a state-created liberty interest such that any process was due. (#22 at 10.) Beyond
27 the sixty days he spent in disciplinary segregation, they argue plaintiff states no facts that
28 demonstrate his time in segregation imposed "atypical and significant hardship." (*Id*.) Moreover,

even if they owed plaintiff due process protections, he received all that was required. (*Id*.) Despite plaintiff's allegations, they argue that the record demonstrates he did, in fact, receive a notice of charges, and that he declined his opportunity to call witnesses at the hearing. (*Id*.) Plaintiff's opposition repeats his contention that he was not provided a notice of charges. (#24 at 8.)

Defendants are entitled to summary judgment. Plaintiff has failed to demonstrate that he had a liberty interest in avoiding disciplinary segregation. The court's analysis here mirrors its analysis of the count I claim, so the court declines to repeat it here. However, but for that conclusion, factual issues preclude the court from determining that defendants are entitled to summary judgment on the independent basis that they provided all that *Wolff* requires. Here, the record does not demonstrate that plaintiff received a notice of charges. Although the "Disciplinary Form II" for OIC 363751 indicates that plaintiff was served a notice on August 22, 2013, the court observes that the actual notice of charges—i.e. the "Disciplinary Form I," which defendants provided as an exhibit to support the arguments on the count I claim—is absent. Defendants fail to explain the omission (*see* #25 at 3) when arguing that they "have demonstrated . . . that Plaintiff simply refused to sign the notice of charges, but was served with copies." Given the absence, the record does not establish this conclusion beyond dispute.

However, the summary judgment record otherwise supports their arguments as to the due process plaintiff received. Plaintiff's request to call Christopher Jones as a witness was approved (#22-4 at 5), and the record repeatedly indicates—both in the disciplinary forms, and also in affidavits—that plaintiff was advised of his right to remain silent (#22-4 at 2, 3). Assuming *arguendo* that plaintiff is correct that Murguia did not have a "confirmed" copy of the notice at the final hearing, and also that plaintiff's reading of the Inmate Disciplinary Manual supports that requirement, the argument fails to create a genuine factual issue. Whatever the particular facets of the NDOC's internal disciplinary procedures, what matters for the due process inquiry is what the Constitution, as interpreted by the federal courts, requires. *Wolff* and its progeny require adequate notice. The Constitution does not demand that a "confirmed" copy of the notice be at hand during the disciplinary proceeding. Thus, even if plaintiff's allegations are true, it does not

raise a due process violation. Because defendants failed to tender an authenticated copy of the notice of charges, the court recommends summary judgment on this count upon the sole basis that, in light of the record, no process was due because plaintiff lacked a liberty interest in avoiding disciplinary segregation.

### C. Eighth Amendment Deliberate Indifference Claim

In count III, plaintiff alleges that Harrison was deliberately indifferent to his medical needs by failing to provide him with necessary "medical shoes" upon his transfer to NNCC from Ely State Prison. (#4 at 6.) He alleges that the shoes are provided through the prison laundry. (*Id*.) Defendants move for summary judgment on the claim on the basis that plaintiff will be unable to establish the necessary elements of an Eighth Amendment claim. (#22 at 11-12.) Supported by affidavits of Harrison (#22-7) and Teri Jacobs ("Jacobs"), NNCC Director Nursing (#22-8), they argue that plaintiff's medical records contain no indication of a need for particular medical shoes, and also that Harrison lacked any knowledge of a medical condition by which plaintiff would have a need for the same. (#22 at 12.) Additionally, they alleges that plaintiff fails to allege any harm, and that he will be unable to demonstrate injury. (*Id*.)

In his opposition, plaintiff does not address these arguments head-on, but instead points to minor inconsistencies in Harrison's declaration. For example, he argues that Harrison's statement that she provided him with the correct-size shoes upon his transfer to NNCC (#22-7 at ¶ 8) is incorrect. He explains that he wears a size eleven and one-half, and inmates are given shoes only in whole sizes. (#24 at 7.) He further states that defendants cannot prove that they issued him shoes at all because they "cannot produce a copy of the NNCC inmate issue sheet . . . ." (*Id*.) Defendants counter, in their reply, that plaintiff's opposition fails to raise a genuine dispute of material fact as to the relevant elements. (#25 at 4.)

#### 1. Legal Standard

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). The Constitution's stricture on the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials

to the medical needs of prisoners. *Id.* at 104. It is well-settled law that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims. First, the plaintiff must satisfy "an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and [also] a subjective standard—deliberate indifference." *Colwell*, 763 F.3d at 1066 (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)) (internal citations and quotation marks omitted). The objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1090, 1096 (9th Cir. 2006). Serious medical needs are those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities' or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (citation and internal punctuation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. Only where a prison "official 'knows of and disregards an excessive risk to inmate health and safety'" is the subjective element satisfied. *Id.* (quoting *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004)). Not only must the defendant prison official have actual knowledge from which he or she can infer that a substantial risk of harm exists, but he or she "must also draw that inference." *Id.* at 837. The standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other[,]" *id.* at 836, and does not include "accidental or unintentional failures to provide adequate medical care . . . ," *Estelle*, 429 U.S. at 105. Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment or care different than the one the inmate requests or prefers.

15

*McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir. 2007). Only where the prison's chosen course of treatment is "medically unacceptable under the circumstances" are the officials' medical choices constitutionally infirm. *Colwell*, 763 F.3d at 1068 (quoting *Snow*, 681 F.3d at 988) (internal quotation marks omitted). Only where infirm treatment decisions result in harm to the plaintiff— though the harm need not be substantial—does Eighth Amendment liability arise. *Jett*, 439 F.3d at 1096.

**2.     Analysis**

Defendants are entitled to summary judgment on the claim against Harrison. Defendants have offered evidence that Harrison lacked subjective knowledge of any medical condition by which she would be required to provide medical shoes to plaintiff, even if it were the case that the prison laundry, rather than the medical department, issued such items. Absent knowledge of a condition requiring particular medical treatment, she cannot be deliberately indifferent. *Colwell*, 763 F.3d at 1066. Moreover, the Jacobs declaration forecloses the possibility that plaintiff has a known medical condition that requires treatment, and he utterly fails to contest this issue in his opposition. Accordingly, his claim makes no showing under the objective element. *Colwell*, 763 F.3d at 1066. Finally, plaintiff's opposition fails to respond with an allegation—let alone substantiated evidence—that he suffered an injury as a result of not receiving medical shoes. Thus, the claim will also fail on the injury element. *Jett*, 439 F.3d at 1096. In sum, the record before the court forecloses a reasonable jury from finding in plaintiff's favor as to any material fact relevant to the Eighth Amendment inquiry. As such, defendants are entitled to summary judgment on this claim.

**D.     Frivolousness**

Defendants request that the court enter findings that plaintiff's claims are frivolous, within the meaning of the PLRA's "three strikes" provision. *See* 28 U.S.C. § 1915(g). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . ." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). "[T]he statute's instruction that an action may be dismissed if the court is 'satisfied' that it is frivolous indicates

that frivolousness is a decision entrusted to the discretion of the court . . . ." *Id*. at 33. Under Ninth Circuit guidance, an action or appeal is frivolous "if it is 'of little weight or importance: having no basis in law or fact.'" *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (quoting *Webster's Third New International Dictionary* 1367 (1993)).

With respect to the property deprivation claim, the court recommends that the District Court decline to deem the claim frivolous and dismiss it pursuant to 28 U.S.C. § 1915(d). The fact of the Walkman's theft renders the claim somewhat audacious and makes the court's recommendation a close call. However, at heart, the court's discussion, *see* Part III.A, *supra*, indicates that there is an arguable question as to when process was due. Plaintiff's claim can be read to indicate that he challenges, in part, that due process protections were afforded after, rather than before, Miller's confiscation. Were it the case that the law demanded a pre-deprivation hearing, the claim would not be a frivolous one, notwithstanding his lack of bona fide property interest. As such, the claim has some basis in law.

With respect to the due process claims in counts I and II, the court again recommends that the District Court decline to find that the claims are frivolous. The record strongly suggests that the claims have no basis in fact, but as to each claim, defendants failed to provide sufficient evidence to foreclose the possibility that all process that could have been due was, in fact, provided. Accordingly, had plaintiff tendered sufficient allegations such that a liberty interest arose, his due process claims might have been plausible. Consequently, the record does not demonstrate that the claims are baseless.

However, the court concurs with defendants that count III is entirely frivolous and should be dismissed as such. The record indicates that plaintiff's contention that he was denied medical shoes has no basis in fact, for he had no prior order for medical shoes. His opposition underscores the frivolity. Rather than address that argument on its merits, he instead engaged in semantic wordplay regarding the Harrison affidavit. Because the claim is frivolous, the court recommends it be dismissed pursuant to 28 U.S.C. § 1915(d).

## IV. CONCLUSION

For the reasons stated herein, the court recommends that defendants' motion for summary judgment (#22) be granted, and that the District Court specifically dismiss count III as frivolous.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#22) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that count III be dismissed for frivolity under 28 U.S.C. § 1915(d);

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: June 30, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**